IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWN TOLMAN<br><br>   Plaintiff,<br><br>  v.<br><br>AMERICAN RED CROSS; IDAHO CHAPTER OF THE AMERICAN RED CROSS,<br><br>   Defendants. | Case No. 4:10-CV-628-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss pursuant to Rules 9(b) and 12(b)(6) filed by the Red Cross defendants. The motion is fully briefed and at issue. For the reasons expressed below, the Court will grant the motion in part and deny it in part.

## LITIGATION BACKGROUND

Plaintiff Tolman alleges that he was fired from his position with the Idaho Chapter of the American Red Cross for complaining about the misuse of public money. He has sued both the Idaho Chapter of the American Red Cross and the national organization known as the American Red Cross. He claims that the Idaho Chapter was controlled by, and acted at the behest of, the American Red Cross. His complaint originally contained five causes of action: (1) breach of contract; (2) breach of the covenant of good faith and

fair dealing; (3) fraud; (4) violation of the False Claims Act Whistleblower Statute; and (5) a claim for a declaratory judgment that the National Red Cross and the Idaho Chapter are a single entity.

The Red Cross defendants filed a motion to dismiss alleging that the fraud claim was insufficient under Rule 9(b) and that all the causes of action fail to state a claim under Rule 12(b)(6). The Red Cross argued that the Red Cross Employee Handbook clearly stated that Tolman was an at-will employee who could be fired for any reason. Tolman responded that he had been promised that he would only be fired for cause.

The Court granted the motion in part, finding that the fraud claim was not pled with the requisite specificity, and that the other claims also needed to be described in more detail. With regard to the fraud claim, the Court allowed Tolman an opportunity to amend his complaint, holding that he could cure the vagueness if he (1) named the individuals who knowingly made the alleged false promises that he was not an "at-will" employee, and (2) described "when and where" those false promises were made.

With regard to Tolman's breach of contract claim, the Court found that under the Employee Handbook, only the Chapter's CEO had the authority to alter Tolman's at-will status. Because Tolman's complaint failed to identify who had promised him that he could only be fired for cause, the Court directed him to amend his complaint to identify (1) who made the promises to him and (2) when and where those promises were made.[1]

---

[1] Tolman's claim for breach of the covenant of good faith and fair dealing stands or falls with his breach of contract claim, so the Court did not evaluate this claim separately.

**Memorandum Decision & Order - 2**

With regard to Count Four alleging a violation of the False Claims Act (FCA), the Court found that the FCA required Tolman to allege that he suffered retaliation for engaging in conduct protected by the FCA. Tolman alleged that he was fired after complaining about the "misuse of public funds," but the complaint seemed to allege that this "misuse" was nothing more than inept fundraising. The Court directed Tolman to amend his complaint "to more precisely describe the fraud against the government, being committed by the National Red Cross and the Idaho Chapter employees, that he was complaining about that caused him to lose his job." *See Memorandum Decision (Dkt. No. 15)* at p. 11.

Finally, the Court dismissed Count Five. Thereafter, Tolman amended his complaint, and the defendants filed another motion to dismiss, alleging that Tolman's failure to cure the defects identified by the Court warrant dismissal of the case.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). An allegation of fraud, however, requires more: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Fed.R.Civ.P. 9(b)*. Claims of fraud – including FCA retaliation claims – must, in addition to pleading with particularity, also plead plausible allegations. *Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir.

2011). That is, the pleading must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Id*. at 1055 (quoting *Twombly*, 550 U.S. at 556).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to

**Memorandum Decision & Order - 4**

dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963 (9th Cir. 2010). In this case, Tolman has been granted his opportunity to amend, and so the sufficiency of his pleading is now squarely before the Court.

Under Rule 12(b)(6), the Court may consider documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, Tolman's complaint refers to an "Employment Contract" that he signed in 2006 and again in 2008. *See Amended Complaint (Dkt. No. 16) at ¶ 48.* Tolman explains that this "Employment Contract" was actually two separate documents, a "Code of Conduct" and an "Employee Handbook." *See Tolman Response Brief (Dkt. No. 20) at p. 3.* Tolman alleges that he signed them both when he was hired in 2006, and that he signed new versions in 2008. *Id.* Given this, the Court can consider these documents without converting the motion to dismiss into a motion for summary judgment.

## ANALYSIS

### Count One – Breach of Contract

The Red Cross seeks to dismiss Count One – the breach of contract claim –

because Tolman signed the Idaho Chapter's employee handbook stating that he was an at-will employee. The handbook states that employment "is on an at-will basis" and that "[a]ny written or oral statement to the contrary by a supervisor or other agent of the Chapter is invalid and should not be relied upon." *See Exhibit A to Robinson Declaration (Dkt. No. 10-2)*. But the handbook does identify one person with authority to alter the at-will status of an employee: "Please understand that no supervisor, manager, or representative of the Chapter *other than the CEO* has the authority to . . . make any promises or commitments contrary to the at-will relationship." *Id*. (emphasis added).

Recognizing that only the CEO could alter Tolman's at-will status, and finding that Tolman failed to identify who promised him job security, the Court directed Tolman to amend his complaint to provide this information. In his amendments to his breach of contract claim, Tolman identifies that person as Rick Phillips, the Idaho Chapter Board Chairman. It is undisputed that Phillips was not, and has never been, the CEO of either defendant. Oral statements by those unauthorized to alter an employee's at-will status have no effect on that status. *See Wilnerd v. Sybase Inc.*, 2010 WL 4362855 at *7 (Oct. 26, 2010) (citing Idaho law holding that oral statements by unauthorized persons do not alter at-will status). So Tolman's allegations that defendants breached Phillips' promises of job security fail to state a claim and will be dismissed under Rule 12(b)(6).

This does not end the inquiry, however. Tolman's complaint also contains an allegation that in June of 2006, CEO Dick Rush "made various and sundry material representations to plaintiff, including but not limited to the promises set forth above." *See*

**Memorandum Decision & Order - 6**

*Amended Complaint (Dkt. No. 16)* at ¶ 75. This allegation is confusing because (1) it is contained in Tolman's fraud claim, and is not mentioned (or incorporated by reference) in his breach of contract claim, (2) Tolman failed to mention it in his briefing defending his breach of contract claim, and (3) the "promises" allegedly made by CEO Dick Rush are not identified other than by the reference "set forth above." That reference seems to point to paragraph 52 of the amended complaint, which in turn refers to the detailed "promises" alleged in paragraphs 44 through 51, all of which are paragraphs contained within Tolman's breach of contract claim.

Reading past Tolman's inartful drafting, his amended complaint could be interpreted to allege that in June of 2006, CEO Dick Rush promised Tolman that he would not be fired without good cause, and that this altered whatever at-will status Tolman had prior to that point. Did Tolman's subsequent signing of the 2008 Employee Handbook re-establish his at-will status? This is not clear because the 2008 Handbook authorized the CEO to alter an employee's at-will status, and this at least creates an issue whether CEO Dick Rush's promise in 2006 of job security carried forward under the 2008 Handbook.

The bottom line is that Tolman has at least stated a claim by alleging that CEO Dick Rush in June of 2006 promised him that he would not be fired without good cause. The Court will not dismiss that claim. However, the Court will dismiss Tolman's claim that Rick Phillips, the Chapter's Chairman of the Board, made promises altering Tolman's at-will status – Phillips was not a CEO and therefore had no authority under the

**Memorandum Decision & Order - 7**

Handbook to alter Tolman's at-will status.

**Count Two – Breach of the Covenant of Good Faith & Fair Dealing**

The defendants seek to dismiss this claim on the ground that it should fall along with Count One. It is undisputed that Count Two depends on Count One. Thus, to the extent Count Two was based on promises made by Rick Phillips, the claim is dismissed. To the extent that Count Two is based on promises made by Dick Rush, the claim is not dismissed.

**Count Three - Fraud**

The Red Cross seeks dismissal of Tolman's fraud claim under Rule 9(b), quoted above. The language of Rule 9(b) requires the complaint to identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citations omitted).

In its earlier decision, the Court held that Tolman's complaint does describe in extensive detail the alleged content of the false promises that he would be fired only for cause, and Tolman has carried forward those allegations in his amendments. *See Amended Complaint (Dkt. No. 16)* at ¶ 48J. He further alleged that the Red Cross officials making those promises never had any intention of keeping them, another necessary element of his fraud claim.

However, the Court also found that the complaint was too vague in identifying

who made the statements – the complaint merely alleged that the false promises were made by the "defendants" and "the board and boards of directors of defendant Chapter." Similarly, the complaint's statement that the false representations were made "during the approximate period 2006 through the end of 2008" failed to comply with Rule 9(b)'s requirement that the complaint identify the dates of the misrepresentations. Accordingly, the Court directed Tolman to identify who made the false promises and when they were made.

In his amendments, Tolman identified three persons who allegedly made fraudulent promises of job security: (1) Rick Phillips in July of 2008, *see Amended Complaint (Dkt. No. 16)* at ¶ 48; (2) Dick Rush in June of 2006, *id*. at ¶ 75; and (3) Teri Ahrens in July of 2008, *id*. These amendments, combined with Tolman's prior detailed pleading of the content of those promises and his reliance thereon, satisfy the pleading requirements of Rule 9(b).

Tolman has, however, made additional fraud allegations that fail to satisfy Rule 9(b). He alleges that in addition to the three persons listed above, "other members [of the] boards of directors of defendant Chapter routinely and consistently made various and sundry material representations to plaintiff . . . ." *Id*. at ¶ 75. This vague allegation fails to follow the Court's direction – and Rule 9(b)'s requirement – that Tolman identify each person making fraudulent promises. Accordingly, this portion of paragraph 75 will be dismissed for failing to meet the requirements of Rule 9(b); Tolman's fraud claim is limited to the alleged fraudulent promises of Rick Phillips, Dick Rush, and Teri Ahrens.

**Memorandum Decision & Order - 9**

## Count Four – Retaliatory Firing

In Count Four, Tolman claims that he was fired for complaining about conduct by the Red Cross that violated the False Claims Act (FCA). He has filed suit under the "whistleblower" provisions of the FCA, 31 U.S.C. § 3730(h), that prohibit firings in retaliation for engaging in conduct protected by the FCA.

Defendants argue that the claim should be dismissed because it fails to state a claim under § 3730(h). To make out a claim under that provision, Tolman must show that (1) he was engaging in conduct protected under the FCA; (2) the Red Cross knew that he was engaging in such conduct; and (3) the Red Cross must have discriminated against Tolman because of his protected conduct. *Cafasso*, 637 F.3d at 1060. An employee engages in protected activity where "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir.2002).

Tolman's original complaint alleged that (1) the American Red Cross operates under a federal charter and receives pubic funds, (2) the Idaho Chapter was controlled by the American Red Cross, and (3) the American Red Cross and the Idaho Chapter acted together in terminating Tolman after he informed officials of the Idaho Chapter about the "misuse of public funds." *See Complaint, supra* at ¶ 14, p. 5. The complaint was quite vague in describing the "misuse of public funds," apparently alleging that the misuse consisted of nothing more than inept fundraising. Even when read liberally, the

Memorandum Decision & Order - 10

complaint did not clearly describe what fraud against the government Tolman was complaining about that cost him his job.

Accordingly, the Court held that Tolman must amend Count Four to more precisely describe the fraud against the government that he was complaining about when fired. In his amendments, Tolman alleges that (1) the Chapter's CEO, Sue Robinson, failed "to do fundraising" but was not worried because she believed the National Red Cross "would step in and cover payroll," *see Amended Complaint (Dkt. No. 16)* at ¶ 88; (2) the lack of fundraising led Robinson to announce a pay cut, which was challenged by the Chapter's Finance Director, Tamara Tracy; (3) the next day, Robinson announced that Tracy's position was eliminated; (4) Robinson failed to hold finance committee meetings in violation of Chapter by-laws, *id*. at ¶ 88; (5) Robinson breached a contract with CHC Foundation, a private third-party philanthropic foundation, *id*. at ¶ 90; (5) Tolman complained about all of this and was fired by Robinson; (6) a day after Tolman was fired, Robinson held a raffle fundraiser where she altered a ticket that was eventually chosen as the winning ticket, *id*. at ¶ 91; and (7) of the money raised at that raffle, about $90,000 is "missing." *Id*.

Tolman argues that his allegation about the missing $90,000 is sufficient to at least state a claim that Robinson was committing a fraud on the Government. But Tolman can only state a claim under the FCA if he alleges that he was fired for complaining about a fraud on the Government. As his own amended complaint shows, he was not fired for complaining about the missing $90,000 because the raffle where that money was

allegedly raised did not occur until after he was fired. *Id*. at ¶ 91.

Tolman argues that his amendments allege that he was fired for complaining about other instances of Robinson's financial mismanagement. In these allegations, listed above, Tolman claims he was fired for complaining about Robinson's failure to raise funds, violation of the Chapter's by-laws, and breach of contract with a third party. In other words, Tolman claims he was fired for complaining about Robinson's financial mismanagement. The issue is whether complaining about financial mismanagement is conduct protected by the FCA

False claims contemplated by the FCA "take many forms." *Cafasso,* 637 F.3d at 1055. Of seven types of actionable conduct listed in the FCA, only three require that the misconduct involve an actual demand for payment. *Id.;* 31 U.S.C. §§ 3729(a)(1)-(3). In the remaining categories, the "false claim" lies in the fraudulent use of a receipt, §§ 3729(a)(4)-(5), unauthorized purchase of government property, § 3729(a)(6), or use of a "false record or statement" to avoid payment to the government, § 3729(a)(7). *Id*. In addition, a request for reimbursement that falsely implied compliance with federal rules could constitute a false claim. *Id*. at 1055-56.

In summary, to commit conduct actionable under the FCA, "one must, in some way, falsely assert entitlement to obtain or retain government money or property." *Id*. at 1056. Tolman has alleged financial mismanagement, claiming that Robinson failed to raise funds, causing hardships and complaints that Robinson suppressed by eliminating positions and firing personnel. This is unsavory conduct but "unsavory conduct is not,

**Memorandum Decision & Order - 12**

without more, actionable under the FCA." *Id.* at 1058. To be protected by the FCA, Tolman needed to be complaining that Robinson was "falsely asserting entitlement to obtain or retain government money or property." *Id.* He makes no such allegation – at most, he is complaining about mismanagement and intimidation tactics. Although he tries to save this claim by pointing to his allegations that Robinson misused the $90,000 gained from the raffle, that conduct occurred after he was fired.

In *Cafasso*, the Circuit affirmed the dismissal under Rule 12 of an FCA claim because the plaintiff failed to allege that the defendant "falsely asserted an entitlement to obtain or retain government money or property." *Id.* at 1056. For the same reasons, the Court will dismiss Tolman's FCA claim.

**American Red Cross & Idaho Chapter**

Tolman has sued both the American Red Cross and the Idaho Chapter of the American Red Cross. In the discussion above, the Court has denied the motion to dismiss as to portions of Tolman's claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) fraud. The American Red Cross argues that it is not liable for any of these claims. With regard to the contract claims, Tolman was hired by the Idaho Chapter and never had a contract with the American Red Cross. He was fired by Sue Robinson, the CEO of the Idaho Chapter for allegedly complaining about the operations of the Idaho Chapter. With regard to the fraud claim, all three of the individuals who allegedly made the false promises of job security were employed by the Idaho Chapter.

**Memorandum Decision & Order - 13**

This raises a serious issue as to whether the American Red Cross should remain in this case. If the two entities were separate corporations, even though parent and subsidiary, Tolman must show that one is the alter ego of the other to pierce the corporate veil. *McClaran v. Plastic Industries, Inc.*, 97 F.3d 347, 357-58 (9th Cir. 1996). Here, plaintiff alleges that the Idaho Chapter is forbidden by its charter from incorporating and is not a separate legal entity from the American Red Cross. *See Amended Complaint (Dkt. No. 16)* at ¶ 6. Tolman further alleges that as to all claims, the two defendants acted in unison. It is unclear from the present record what the relationship is between the two defendants. For this reason, the Court will deny the motion to dismiss the American Red Cross without prejudice to raise this motion again on a more complete record.

## Conclusion

In conclusion, the Court shall grant the motion to dismiss in part and deny it in part. With regard to Count One, the Court will dismiss claims that defendants breached promises made by Rick Phillips, the Chapter's Chairman of the Board. The Court will not dismiss, however, claims that the defendants breached promises made by Dick Rush, the Chapter's CEO. To the extent Count Two was based on promises made by Rick Phillips, the claim is dismissed. To the extent that Count Two is based on promises made by Dick Rush, the claim is not dismissed.

The claim in Count Three that Phillips, Rush, and Ahrens made false and fraudulent promises remains. The claim that "other members" of defendants made such promises is dismissed. Count Four will be dismissed.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 18) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to (1) dismiss that portion of Count One that defendants breached promises made by Rick Phillips, the Idaho Chapter Board Chairman; (2) dismiss that portion of Count Two that relied on the promises of Rick Phillips; (3) dismiss that portion of Count Three that "other members [of the] boards of directors of defendant Chapter routinely and consistently made various and sundry material representations to plaintiff"; and (3) dismiss Count Four. The motion is denied in all other respects.

DATED: **March 14, 2012**

/s/ B. Lynn Winmill
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 15**